DA2CBAGP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                             10 CR 938 (AKH)

SOULEYMANE BAGAYOKO,

           Defendant.

------------------------------x

                                New York, N.Y.
                                October 2, 2013
                                12:00 p.m.

Before:

          HON. ALVIN K. HELLERSTEIN,

                           District Judge

                 APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
ANDREA GRISWOLD
    Assistant United States Attorney

NEIL CHECKMAN
    Attorney for Defendant

DA2CBAGP

1              (In open court)
2              THE CLERK:  All rise.  U.S. versus Bagayoko.  Counsel,
3     please state your appearances for the record.
4              MS. GRISWOLD:  Andrea Griswold for the Government.
5     With me is Probation Officer Robert Walsh.  Good morning, your
6     Honor.
7              MR. WALSH:  Good morning, your Honor.
8              THE COURT:  How are you doing, both of you.
9              MR. CHECKMAN:  Neil Checkman for Souleymane Bagayoko.
10    Good morning, your Honor.
11             THE COURT:  Good morning, Mr. Checkman.  Good morning,
12    Mr. Bagayoko.
13             THE DEFENDANT:  Good morning.
14             THE COURT:  What's your first name, Mr. Walsh?
15             MR. WALSH:  Yes?
16             THE COURT:  What's your first name?
17             MR. WALSH:  Robert.
18             THE COURT:  What's your extension?
19             MR. WALSH:  5107, your Honor.
20             THE COURT:  Mr. Checkman, what is aggravated
21    unlicensed operation of a motor vehicle?  What makes it
22    aggravated?
23             MR. CHECKMAN:  I think what makes it aggravated, your
24    Honor, is that they send out a notice of suspension.
25             THE COURT:  No.  What acts make it aggravated?

1      MR. CHECKMAN: More than one -- the repetition, your
2  Honor.
3      THE COURT: Okay. How do you want me to handle the
4  case, Ms. Griswold?
5      MS. GRISWOLD: With your Honor's permission, I'd ask
6  that you hear from Probation Officer Walsh regarding the
7  updates that have occurred since we appeared before your Honor
8  in July. I believe that these updates indicate that it would
9  be best to come back in for another conference, that the
10  pending state charges have not been resolved at this point, but
11  that the defendant has made some progress in terms of his
12  employment and educational status.
13      THE COURT: I have to take this call, excuse me,
14  please.
15      (Recess taken)
16      THE COURT: Be seated. I'm sorry for the
17  interruption. So you were saying that Mr. Walsh is going to
18  update me since you last were here before me in July?
19      MS. GRISWOLD: Yes. Just to summarize --
20      THE COURT: Basically, we don't know anything more.
21      MS. GRISWOLD: Let me summarize the Government's
22  position at this point and what we do know. The Government
23  finds that --
24      THE COURT: You want Mr. Walsh to do that or you want
25  to do that?

1                MS. GRISWOLD:  Either way that your Honor would like
2     to proceed, I'm prepared to do so.
3                THE COURT:  You call it.  Whichever you want.
4                MS. GRISWOLD:  Okay.  Mr. Walsh can give the Court an
5     update.
6                THE COURT:  Okay.
7                MR. WALSH:  Good morning, your Honor.
8                THE COURT:  Good morning.
9                MR. WALSH:  Regarding Mr. Bagayoko's Ulster Town Court
10    case, his case was adjourned to November 12th.  Regarding the
11    status of any possible additional charges, I will be speaking
12    with Ulster Assistant District Attorney Joshua Pulville next
13    week, during the week of the 7th, at which time he'll provide
14    me with an update on the status of any possible added charges
15    that may exist and may be pending at the present time.
16               THE COURT:  What kind of added charges?
17               MR. WALSH:  Possible added identity fraud charges that
18    were originally indicated in the violation report that I
19    forwarded to your Honor.
20               THE COURT:   Fraud to procure what?
21               MR. WALSH:   If I just may refer to my report a
22    second.
23               THE COURT:  Of course.  Only the judge has to remember
24    everything.
25               MR. WALSH:  Okay.  He's being investigated for

1    possessing the identities of 29 different individuals and their
2    confidential information, either through text messages or
3    photographs on his personal cell phone, that would include
4    their names, dates of birth, addresses and in some instances
5    their social security numbers.
6             THE COURT:  That's the crime he's --
7             MR. WALSH:  That's a possible added activity in
8    addition to the current charges.
9             THE COURT:  But that was sentenced and issued for?
10            MR. WALSH:  To clarify to your Honor, the
11   investigation is pending.  Nothing definite is known as of yet,
12   and I've been having repetitive follow-up phone conferences
13   with the assistant district attorney in Ulster Town Court to
14   obtain constant updates on the status of possible added
15   charges, and I will keep your Honor informed as well.
16            THE COURT:  I can tell you this, with this overhang
17   I'm not happy waiting on the slow processes of our state
18   system --
19            MR. WALSH:  Okay.
20            THE COURT:  -- to control what I may have to do.
21            MR. WALSH:  Okay.
22            THE COURT:  I don't know what alternatives there are
23   given the budgetary limitations that your office has to operate
24   under.
25            MR. WALSH:  If I may, on the upside, since our

1  previous court appearance, per your Honor's request, I did
2  speak to Mr. Bagayoko's former employer, Mr. Alex Solomon, and
3  Mr. Bagayoko has successfully reobtained his prior employment
4  position as an assistant boxing trainer at the Fernandez Boxing
5  Gym.  His monthly income now is averaging 1200 a month.  He
6  appears to be back on the right track with regard to
7  restabilizing his employment.
8              He's scheduled to officially commence a GED course at
9  the Adult Learning Center in Harlem on October 15th, and his
10 pending Manhattan violation, Vehicle Traffic Law violation case
11 that we just spoke of, has been adjourned until January 2nd,
12 and that's as to all aspects of Mr. Bagayoko's case.
13             THE COURT:  Does he have a residence in Ulster
14 County?
15             MR. WALSH:  Not to my knowledge, no.
16             THE COURT:  Where is he?  In Ellenville?
17             MR. WALSH:  His residence?
18             THE COURT:  No, the --
19             MR. WALSH:  Oh, the charges.  An offense occurred in a
20 Sear's store within the Ulster Town Mall, from what I
21 understand, which I believe is Northern District of New York.
22 That's what -- and that brings your Honor up-to-date.
23             THE COURT:  Thank you.  Mr. Checkman, anything to tell
24 me?
25             MR. CHECKMAN:  Yes, your Honor.  I've spoken with

1   Mr. Bagayoko's Manhattan attorney, Lawrence Linger from the
2   Legal Aid Society, and he informs me that they've made
3   Mr. Bagayoko an offer of a traffic infraction, not a crime, and
4   Mr. Bagayoko --
5            THE COURT:  I'm not very much excited about the --
6            MR. CHECKMAN:  All right, then I'll jump.
7            THE COURT:  -- license issues.  It raises a question
8   in my mind because he has been involved with identity fraud in
9   the past and that goes hand in hand with licenses, but what
10  disturbs me greatly are the pending charges.
11           MR. CHECKMAN:  Well, the charges -- this is what I
12  understood.  I also spoke to Mr. Marino, who is Mr. Bagayoko's
13  attorney on the Ulster County case, and Mr. Marino informs me
14  that there was a court appearance yesterday but Mr. Marino was
15  unable to get to Ulster due to the fact he had a case on in the
16  Southern District of New York.  But what he informs is this,
17  the speedy trial clock on the state charges in Ulster County
18  has run.  He said based upon his knowledge of the practice in
19  Ulster County, he will be required to file a motion to dismiss
20  the charges for failure to prosecute, and that would be -- I
21  believe that that case has been adjourned to November of 2013,
22  based -- and that at that point in time it's my hope that
23  Mr. Marino would have filed a motion to dismiss.  I do not know
24  whether the district attorney's office in Ulster County will be
25  filing papers on that or not.

|     |     |
| --- | --- |
| 1   | As for the possible additional charges that Mr. Walsh referred |
| 2   | to, my understanding is that in the car in which Mr. Bagayoko |
| 3   | was arrested, there was a phone, and in the phone there were |
| 4   | these addresses and other personal information and that the |
| 5   | phone was not on Mr. Bagayoko, nor is the phone registered to |
| 6   | Mr. Bagayoko's name, which brings up the question as to whether |
| 7   | in fact this was his phone at all.  And that might be the |
| 8   | reason that, despite the fact that he was arrested over six |
| 9   | months ago and that there was a possibility of bringing those |
| 10  | charges, they haven't brought those charges. |
| 11  | So there may be an evidentiary problem in state court |
| 12  | linking the identification information in the phone with |
| 13  | Mr. Bagayoko as to whether that gets solved or not.  I think |
| 14  | that that's up to Mr. Pulville and his office up in Ulster |
| 15  | County.  So it's -- |
| 16  | THE COURT:  Mr. Checkman, you're a good lawyer.  My |
| 17  | interest is beyond being a good lawyer.  The whole point of |
| 18  | probation, the whole point of the sentence is that I considered |
| 19  | Mr. Bagayoko someone who was a good candidate to turn around |
| 20  | his life, and what I'm hearing makes me worry about my view. |
| 21  | I can understand that he can be very lucky and there could be a |
| 22  | failure of proof, but what I'm more concerned about is what are |
| 23  | the trends for Mr. Bagayoko.  Is it to go back to where he was? |
| 24  | In which case, something is going to happen, he's not going to |
| 25  | be lucky, and he'll get put away for a very long time; or he'll |


1   be reformed.
2            MR. CHECKMAN:  Well, I look at this on an optimistic
3   note, your Honor.  Based upon from July to now --
4            THE COURT:  That's why you're a defense counsel.
5            MR. CHECKMAN:  It's just the way I was brought up,
6   your Honor.  And I was a defense counsel for pretty much 33 out
7   of the 40 some odd years I've been practicing.
8            But I can point out to the court that it is a good
9   sign that Mr. Bagayoko has enrolled in the Adult Learning
10  Center to get his GED.
11           THE COURT:  Yes.
12           MR. CHECKMAN:  It's an excellent --
13           THE COURT:  And it's good that he's working.
14           MR. CHECKMAN:  And it's good that he's working.  And
15  it's excellent that he has informed me that he has applied for
16  -- he's applied to the Social Security Administration to get a
17  social security card.  If he gets his social security card,
18  your Honor, he'll be able to -- he'll be able to have the
19  proper identification to be able to get a license, therefore,
20  the possibility that he would be involved in driving without a
21  license is therefore diminished.  Now that he has gotten
22  employment, your Honor --
23           THE COURT:  I think I've heard enough to understand
24  this.  Standard condition No. 9 states that defendant shall not
25  associate with any persons engaged in criminal activity and

1   shall not associate with any person convicted of a felony,
2   unless for any permission to do so by the probation officer.
3   That's No. 9.  And the incidence within the car, perhaps not
4   attributable legally to Mr. Bagayoko, concern me because they
5   do violate No. 9.
6          We're going to adjourn this so I can keep an eye on
7   Mr. Bagayoko.  But, Mr. Checkman, I would appreciate it if you
8   would go over all the conditions that pertain to Mr. Bagayoko's
9   probation, including No. 9, make sure he understands it and
10  make sure he understands how important it is that he not be
11  cited for a violation.  Because I don't know what attitude I
12  would have if something were brought before me and it showed
13  that Mr. Bagayoko has abused the trust I put in him by giving
14  him only hold detention rather than jail.
15         MR. CHECKMAN:  Your Honor, I will have Mr. Bagayoko --
16  I will make an appointment before leaving the building today
17  with Mr. Bagayoko to come into my office so that we can discuss
18  the conditions of his probation.
19         THE COURT:  All right.  And I want you to understand,
20  Mr. Bagayoko, that under supervised release or under probation
21  conditions is not the same as if you're free from all
22  restraint.
23         THE DEFENDANT:  Yes, sir.
24         THE COURT:  The probation officer has to follow-up on
25  you.

DA2CBAGP

1        THE DEFENDANT:  Yes, sir.
2        THE COURT:  He has to make sure you abide by all the
3    conditions that obtain.
4        THE DEFENDANT:  Yes, sir.
5        THE COURT:  You cannot hang around with people who are
6    criminals or engage in criminal activity.
7        THE DEFENDANT:  Yes, sir.
8        THE COURT:  Because that's trouble standing right next
9    to you.
10       THE DEFENDANT:  Yes, sir.
11       THE COURT:  Anything else, Ms. Griswold?
12       MS. GRISWOLD:  No, your Honor.
13       THE COURT:  What's a good adjournment, Mr. Walsh?
14       MS. GRISWOLD:  I think we set something down perhaps
15   for late in November.
16       THE COURT:  That's too early.
17       MS. GRISWOLD:  That's too early?  I'm just looking at
18   the adjournment dates on the Ulster case, but if your Honor
19   wants to push it out further and wanted to give the parties an
20   opportunity to reach out so next when we appear we can give
21   your Honor more facts as to where --
22       THE COURT:  Let's do early January.
23       MS. GRISWOLD:  Okay.
24       MR. CHECKMAN:  Your Honor --
25       THE COURT:  Note that if something needs my attention

DA2CBAGP

1  earlier, just call Ms. Jones.
2          MS. GRISWOLD:  Yes, yes, your Honor.
3          MR. CHECKMAN:  Your Honor, might I suggest late
4  January, since I don't have the dates unfortunately, but my
5  wife has scheduled our vacation for early January somewhere in
6  the first two weeks.
7          THE COURT:  Third week in January.
8          THE CLERK:  January 24th at 11:00.
9          THE COURT:  Make sure you stay away from trouble,
10 Mr. Bagayoko.
11         THE DEFENDANT:  Yes, sir.
12         THE COURT:  All right.  Thank you.
13         MS. GRISWOLD:  Thank you.
14         MR. CHECKMAN:  Thank you, your Honor.
15         (Adjourned)